NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
DENNIS DAY,                         :
                                    :
            Plaintiff,              :   Civil No. 07-2968 (RBK)
                                    :
      v.                            :   **OPINION**
                                    :
MICHAEL J. ASTRUE, COMMISSIONER     :
OF SOCIAL SECURITY,                 :
                                    :
            Defendant.              :
_____:

**KUGLER**, United States District Judge:

This matter comes before the Court upon appeal by Plaintiff Dennis Day ("Day" or "Claimant"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and Social Security Income ("SSI"). For the reasons set forth below, the Court affirms the ALJ's decision.

**I.    BACKGROUND**

Claimant alleges he is disabled with an onset date of April 16, 2004. He attributes his alleged disability to AIDS, Hepatitis C, and chronic lower back pain.

Day has held a variety of jobs over the past fifteen years. He worked as a porter in hotels and casinos for much the late 1980s and early 1990s. (R. at 55-60, 68.) During the late 1990s,

1

he worked as a gas station attendant. (R. at 68.) His final employment prior to his onset date was with a glassware manufacturer working as a glass packer. (R. at 68.) Day's employment with the glass manufacturer ended on April 15, 2004. (R. at 68.) He claims his disability began the following day. Claimant later worked as a laborer at Aunt Kitty's Food Inc. from October 4, 2004 to November 11, 2004. (R. at 110.) However, he was unable to continue the work because of his back pain. (R. at 112.) The Social Security Administration accepted this as an unsuccessful work attempt. (R. at 117.) He went on welfare and was excused from Work First New Jersey's ("WFNJ") work requirement due to disability for six to twelve months on May 4, 2005. (R. at 119.)

Day was diagnosed with HIV in 1998. (R. at 178.) He began seeing Dr. Christopher Lucasti on October 28, 2003. (R. at 178.) Dr. Lucasti noted a range of problems during the initial visit, including HIV/AIDS with a low CD4 count[1], fever, weight loss of 15 pounds, blurred vision, thrush on his nodes, chronic cough, genital warts on his anus and penis, odynophagia and dysphagia, back pain, and balance problems. (R. at 178.) Claimant was taking Difucan, Trizivir, and Viread to treat his HIV at the time. (R. at 178.) Dr. Lucasti added Bactrim and Reyataz to his prescriptions over the next month. (R. at 178.)

In subsequent visits, Day continued to have complaints about his health, though not the litany he described at his first appointment. He complained of difficulty sleeping in addition to continued phlegm and coughing on December 3, 2003 (R. at 173), recurrence of warts and

---

[1] A CD4 count in a normal a healthy individual will range from 500 to 1,500. The Centers for Disease Control and Prevention considers HIV-infected persons who have CD4 counts below 200 to have AIDS, regardless of whether they are sick or well. Centers for Disease Control and Prevention, Case Definitions for Infectious Conditions Under Public Health Surveillance, http://www.cdc.gov/ncphi/disss/nndss/casedef/aids1993.htm (last visited Aug. 12, 2008).

weight loss on May 4th, 2004 (R. at 163), coughing and warts on July 6, 2004 (R. at 153), and back pain on December 14, 2004 (R. at 143). During this period, his viral load count rose, then fluctuated, but only went above 5000 once on May 4, 2004.[2] (R. at 146.)

On January 19, 2004, Claimant under went an Exercise Stress Test . He achieved 85% of age-predicted maximum heart rate and was considered in a low functional class for his age with achievement of 7.1 METS. (R. at 186.) Myoview imaging during this visit found no significant coronary disease. (R. at 184.) On June 14, 2004, Claimant went to Shore Memorial Hospital to have penile and anal warts removed. (R. at 187.) The admitting physician, Dr. Gary Feinberg, reported Day was thin and weighed 155 pounds. (R. at 188.) Claimant under went a successful surgery to remove warts later that day. (R. at 188-9.)

In response to Claimant's complaints of back pain, Dr. Lucasti ordered an MRI on December 28, 2004, and a "minimal angular bulge at L4-5" was discovered. (R. at 139.) On January 28, 2005, Day received a medical examination from Dr. David Tiersten. (R. at 194-7.) Dr. Tiersten reported Claimant was able to complete many activities of daily living including cooking, cleaning, laundry, shopping, showering, bathing, and dressing. (R. at 194.) He noted that Claimant complained of back pain that felt "like something pulling me apart," but found his back x-rays to be "unremarkable." (R. at 195-196.) He made a diagnosis of AIDS and back pain with a "guarded" prognosis, and he concluded that "there are no limitations derived from today's evaluation." (R. at 196.)

---

[2] The ALJ seems to have confused CD4 count with viral load count. Claimant's CD4 never goes over 400. It remains in or around 60 cells per cubic millimeter of blood, which is consistent for a patient with AIDS. The numbers the ALJ cites are viral load counts. A higher viral load represents a higher concentration of the virus in the blood.

On February 17, 2005, a medical consultant at the New Jersey Division of Disability Determinations filled out a Physical Residual Functional Capacity Assessment. (R. at 200-5.) The consultant determined that Claimant could lift 50 lbs occasionally, 25 lbs frequently, either stand/walk or sit for 6 hours in an 8 hour work day, and had no limitations in his ability to push or pull. (R. at 201.) Further, he had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 201-4.) The consultant noted that Claimant failed to make any specific allegations of limitation, and that although no limitations were noted on the exam, "given the history of HIV and the confirmation of a back disorder by MRI imaging, some limitation is likely." (R. at 205.) Ultimately, the medical consultant concluded Claimant retained a full range of medium functional capacities with no further limitations. (R. at 205.)

In a form requesting certification of disability under WFNJ on May 4, 2005, a physician's assistant under Dr. Lucasti supported the certification noting that Claimant had AIDS and near syncope (a feeling of impending loss of consciousness). (R. at 119-20.) In reports filled out for the New York Office of Temporary and Disability Assistance on January 5, 2005 and May 4, 2005, Dr. Lucasti reported Claimant had HIV and Hepatitis C. (R. at 133, 123.) He went on to check off that Claimant had no limitations in sitting, standing, walking, lifting, carrying, or handling objects, or any mental capacity limitation. (R. at 126-7, 135, 137.) He did note that low back pain could be a limitation on physical activity in the January report. (R. at 135.)

Day continued to see Dr. Lucasti and continued to complain of phlegm during this period. (R. at 129.) At appointments in May, June, August and September of 2005, Claimant complained of dizziness and "feeling like he was going to pass out." (R. at 249, 254, 255, 260.) On September 20, 2005, Dr. Lucasti diagnosed Claimant with vertigo. (R. at 249.) At a visit on

4

November 1, 2005, it was noted that Day had broken his wrist. (R. at 245.) He continued to complain of wrist pain at check-ups into 2006. (R. at 237, 239, 244.) He came in with a cold and congestion on January 31, 2006 and was noted to have thrush at every appointment through September 9, 2006. (R. at 237, 239, 243, 244.)

On July 26, 2006, Dr. Lucasti filled out a report where he checked off that Claimant had hepatitis, resulting in chronic liver disease, nephropathy, chronic renal failure, and HIV wasting syndrome. (R. at 231-32.)

On November 30, 2004, Day filed an application for a period of disability, disability insurance benefits ("DIB"), and Social Security Income ("SSI") with an alleged onset date of April 16, 2004. (R. at 49-53.) His application was initially denied on March 3, 2005 and on reconsideration on April 28, 2005. On May 19, 2005, Claimant filed a timely written request for a hearing, which was held in front of ALJ Shoemaker on July 6, 2006.

At the hearing in front of ALJ Shoemaker, Claimant testified to weighing about 160 pounds, but that he had previously weighed 175 pounds. (R. at 294.) He claimed to have lost the weight due to his full blown AIDS. (R. at 294.) He also testified to having difficulty driving because of his vertigo, which kept him "kind of wobbly." (R. at 295.) He admitted to smoking less than a pack of cigarettes a day and drinking occasionally. (R. at 295.) He claimed he became unable to work on April 16, 2004 due to an injury to his back at his job with Aunt Kitty's Foods.[3] (R. at 296.) He testified to filing for welfare after leaving that job. (R. at 297.) He

---

[3] It appears in the record that Claimant obtained this job after filing for disability. As previously mentioned, this employment was accepted by the Commissioner as an unsuccessful work attempt. (R. at 117.) The record suggests April 16, 2004 was the day after he left his previous job as a glass packer, and it was November 19, 2004 when he left Aunt Kitty's Food due to his back pain. (R. at 68, 110.)

suggested that he could not work as a gas station attendant again because he was "wobbly on [his] feet all the time." (R. at 300.)

When questioned by his lawyer, Claimant recalled how he had first been diagnosed with AIDS by a Dr. Tomar in 1998. (R. at 302.) He testified that during this period he felt bad all the time and had started to lose weight. (R. at 302.) He testified to experiencing vertigo approximately four times a week. (R. at 303.) He explained that it didn't last long, but he had to "sit still and let it go away." (R. at 303.) He also testified to a continuing problem with phlegm and that some of his medication gave him diarrhea. (R. at 304.) He testified that he was given medication to deal with the diarrhea but that it was not always effective. (R. 304.) He also testified to a history of thrush but said he had not had it for a while. (R. at 304.) He testified to no knowledge of any treatment he obtained for liver disease. (R. at 305.) He stated he had purple lesions on his body. (R. at 306.) He testified that he had constant back pain, which he treated with over-the-counter pain medication. (R. at 306-7.) When again questioned by ALJ Shoemaker, he complained he did not sleep comfortably at night and often tossed and turned thinking about death. (R. at 308.) He claimed to have lingering pain in his hand since breaking it two months previously. (R. at 309.) He also testified to getting winded going up one flight of stairs to his home. (R. at 310.)

ALJ Shoemaker issued an opinion on September 11, 2006 denying Day's claim. (R. at 17-20.) Day filed a request for review on November 13, 2006. (R. at 10.) The Appeals Council denied the request on May 24, 2007, and ALJ Shoemaker's became the final decision of the Commissioner. (R. at 3-5.) Claimant filed the present action seeking review of the decision on June 26, 2007. This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has

given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

### III. DISCUSSION

For disability insurance benefits, a claimant must meet the insured requirements of the Social Security Act. To receive these benefits, a claimant must prove disability on or before the date the insured requirements were last met. These requirements do not apply to claims for supplemental security income.

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner

continues to step four to evaluate the claimant's residual functional capacity ("RFC") and to analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Here, ALJ Shoemaker first determined that Day had not engaged in substantial gainful activity since his alleged onset date of April 16, 2004. (R. at 19.) The ALJ next determined that Claimant had severe impairments including AIDS, chronic low back pain, and hepatitis C. (R. at 19.) ALJ Shoemaker then decided these impairments did not meet or medically equal the criteria of any impairment contained in the listing of impairments, specifically looking at Listings 14.08 (HIV Wasting Syndrome), 1.04 (Disorder of the spine), and 5.05 (Inflammatory bowel disease). (R. at 20-21.) The ALJ next determined Claimant had the RFC to lift and carry up to 25 pounds frequently; sit, stand, and/or walk for about six hours in an eight hour work day, and that he had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 21.) Based on this assessment, ALJ Shoemaker determined Day could return to his past relevant work as a gas station attendant, a job which exists in significant numbers in the national economy. (R. at 22.) Accordingly, he held that Day was not disabled under the Social Security Act. (R. at 22.)

Day argues ALJ Shoemaker erred as a matter of law by improperly discounting the testimony and argues that his testimony is supported by objective medical evidence. He contends ALJ Shoemaker failed to properly weigh and evaluate the entire medical record in calculating

Claimant's RFC. He also asserts ALJ Shoemaker improperly evaluated Claimant's equivalence to a Listed Impairment, particularly by failing to call a medical expert to testify to the issue of medical equivalence. The Commissioner argues that ALJ Shoemaker's decision was supported by substantial evidence and should be affirmed.

### A. Claimant's Testimony

Day contends that ALJ Shoemaker improperly dismissed testimony regarding the seriousness of his impairments. The ALJ should consider a claimant's subjective complaints of pain even if not fully confirmed by objective medical evidence. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971). When subjective complaints of pain are supported by the medical evidence, they should be given great weight. Tabron v. Harris, 667 F.2d 412, 415 n.6 (3d Cir. 1981). Social Security Ruling ("SSR") 96-7p requires an ALJ, in determining the credibility of an individual's statements about pain or other symptoms and their functional effects, "to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."

Claimant argues the testimony in this case was corroborated by the medical evidence and lab reports of Dr. Lucasti, and ALJ Shoemaker was incorrect in discounting it. Day argues that the five sentences ALJ Shoemaker spent on credibility in the opinion did not provide a sufficient explanation to disregard the testimony. Specifically, he alleges ALJ Shoemaker did not properly take into account Claimant's testimony of vertigo and fatigue in determining Claimant's impairments.

ALJ Shoemaker did not ignore Claimant's testimony. He acknowledged the medical record supported the existence of the symptoms Day complained of at the hearing, but he found the intensity, frequency, and duration alleged by Day were inconsistent with the medical record. (R. at 21.) This conclusion was supported by the record, especially by Dr. Tiersten's report, which described the daily activities Day performed. (R. at 194-7.) Also, Claimant's own testimony often undercut itself. While he claimed he felt like passing out all the time because of his vertigo at one point (R. at 300-1), he later explained the vertigo only occurred about four times a week, and went away after sitting still for a while. (R. at 303.) Although ALJ Shoemaker's explanation was minimal, it is sufficient to allow for this Court to review his decision to discount Claimant's testimony, and the Court finds the conclusion to be supported by substantial evidence.

### B. Weighing of Medical Sources

Day argues ALJ Shoemaker substituted his own opinion for that of the medical sources when he should have given Dr. Lucasti's report controlling weight. He also argues ALJ Shoemaker gave too much weight to the New Jersey Division of Disabilities report of February 17, 2005. He further contends that ALJ Shoemaker did not properly explain his reasoning for giving the weights he did to different sources. Specifically, Day argues the ALJ did not adequately explain his dismissal of Dr. Lucasti's conclusions.

An ALJ must weigh all of the relevant evidence and provide adequate reasoning for dismissing evidence. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); Cotter v. Harri, 642 F.2d 700, 705 (3d Cir. 1981). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physician's reports great weight, especially 'when their opinions

11

reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). When a treating physician's report "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the ALJ should give it controlling weight. 20 C.F.R. 1527(d)(2). The ALJ "must always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion." Id. The ALJ should also look at whether a source has examined the claimant, the nature and extent of the relationship between source and claimant, the supportability of the source's diagnosis (i.e., the more medical evidence a source presents the more weight his or her opinion will get), the consistency of the source's records, and the specialization of the source. 20 C.F.R. 1527(d). "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

Although the record for this case is voluminous, it contains little coherent substance. It consists primarily of skeletal treatment notes and forms from Dr. Lucasti. Most of Dr. Lucasti's conclusions were accepted and given significant weight. (R. at 20.) The ALJ only rejected an unsubstantiated check-off form. He correctly concluded the form was not supported by Dr. Lucasti's own treatment notes, or by any other medical source. Proper deference was given to the treating physician, and the ALJ's reasoning in discounting Lucasti's check-off form was correct.

Claimant's argument regarding the weight given to the State Agency's RFC report has more merit. The law is clear that such forms, though they may be simple to understand in

comparison with the rest of a sparse record, should not be given significant weight, and it was inappropriate for the ALJ to rely so heavily upon it.  The Court, however, finds this to be harmless error.  Other medical sources, including Claimant's treating physician Dr. Lucasti, noted that Day had no limitations.  (R. at 196, 123-8, 133-8.)  The Court also notes that although the ALJ adopts much of the RFC report in his opinion, the ultimate conclusion was that Claimant was able to perform his past work, which requires a much lower RFC then the ALJ found.  That decision is clearly supported by substantial evidence.

### C. Listed Impairments

Day also argues that he presented sufficient evidence to meet Listing 14.08H, HIV Wasting Syndrome.  He argues ALJ Shoemaker's opinion simply makes a conclusory statement at step three and does not give sufficient reasoning for proper judicial review.  He further contends that the evidence the ALJ received prior to the hearing (R. at 231-60) may have changed the findings of the State agency, and a medical expert should have been called to determine potential equivalency to a Listed Impairment.

The Commissioner is responsible for deciding the ultimate legal question whether a listing is met or equaled.  SSR 96-6p.  In order for an impairment or impairments to match a Listing, "it must meet *all* of the specified medical criteria."  Sullivan v. Zebley, 493 U.S. 521, 529 (1990) (emphasis in original).  The burden is on a claimant to present medical findings equal in severity to all the criteria of a Listed Impairment.  Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

An ALJ is required to give sufficient reasoning in his or her opinion to allow for meaningful judicial review of why a claimant failed to meet this burden.  See Burnett v. Comm'r

13

of Soc. Sec., 220 F.3d 112 (3d Cir. 2000); Knepp v. Apfel, 204 F.3d 78, 84 (3d Cir. 2000). Conclusory or near conclusory statements are not sufficient. Id. However, when a claimant does not meet the burden of production, the ALJ is not required to articulate specific reasons. Ballardo v. Barnhart, 68 F. App'x. 337, 338 (3d Cir. 2003).

In addition, SSR 96-6p requires that

> an administrative law judge . . . must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Claimant did not carry his burden in this case. In order to meet the listing for 14.08H, HIV Wasting Syndrome, Claimant must show he has HIV, has involuntarily lost a significant amount of weight, and either has chronic diarrhea or persistent fever and weakness. Day undoubtedly has HIV, and may have had the requisite weight loss, but he did not show either chronic diarrhea or fever and weight loss. As mentioned above, the ALJ properly discounted Claimant's testimony and is not required to follow a treating physicians unsubstantiated conclusions regarding a Listed Impairment. The treatment notes, which ALJ Shoemaker refers to, and gives great weight to, make no mention of either fever or diarrhea. It remains the Commissioner's final decision as to whether a Listing is met, and it is the Claimant's burden to show *all* elements of a Listing have been met. The ALJ's conclusion that this burden was not met is supported by substantial evidence.

As Claimant did not meet his burden to produce medical evidence, the ALJ was not required to give specific reasoning or call a medical expert. Although a more thorough review of

14

the record at step three would have been appreciated, both by Claimant and this Court, it is not required.  The ALJ's naming of the specific Listings and reference to Dr. Lucasti's treatment notes was sufficient explanation to afford a meaningful judicial review.  Similarly, a medical expert is only required when the ALJ believes the newly admitted evidence would change a consultant's decision regarding equivalence.  The ALJ properly rejected the evidence Claimant relies on, and Claimant failed to meet his burden of production at step three.  Either of these would be sufficient to affirm the ALJ's decision not to obtain an updated medical opinion.

### D.  RFC

Finally, Day argues ALJ Shoemaker did not properly take all the evidence into account when calculating Claimant's RFC and failed to make a function-by-function assessment.  He also argues the ALJ failed to compare the functions involved in the employment suggested with Claimant's individual impairments.

Although the ALJ must consider all relevant evidence when considering a claimant's RFC, the final responsibility for making the determination rests with the Commissioner.  20 C.F.R. § 404.127(e)(2).  See Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992).

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p(4).  The functions referenced include physical abilities, mental abilities, and other abilities affected by impairments.  20 C.F.R. §§ 404.1545, 416.945.

Claimant's treating physician, Dr. Lucasti, as well as Dr. Tiersten, both explicitly noted

he had no limitations. (R. At 126-7, 135, 137, 194-7.) As discussed above, the ALJ properly weighed these medical sources. Moreover, the ALJ provided a function-by-function explanation in his finding that Day could "lift and carry up to 25 pounds frequently; sit, stand, and/or walk for about six hours in an eight hour workday." (R. at 21.) He went on to find "no postural, manipulative, visual, communicative, or environmental limitations." (R. at 21.) It wasn't until after this assessment that he went on to decide Day was in fact capable of performing his past relevant work at the light exertional level. Further, he compared Day's past relevant work and RFC, explaining Claimant had a full range of motion and no supported cognitive limitations. The decision that Day could return to his past relevant work was supported by substantial evidence.

### IV.  CONCLUSION

ALJ Shoemaker's decision was supported by substantial evidence, and his opinion did allow for meaningful judicial review. This Court accordingly affirms his decision that Day is not disabled and not entitled to DIB or SSI. An accompanying order will issue today.


Dated:   8-19-08                                              /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge